[No. 10744-2-III.   Division Three.   October 10, 1991.]

LARRY R. WEIR, *as Personal Representative, Appellant,*
v. AMERICAN MOTORISTS INSURANCE
COMPANY, *Respondent.*

*Larry J. Kuznetz, Todd Startzel,* and *Powell & Morris P.S.,* for appellant.

*Donald P. Marinkovich* and *LeGros, Buchanan, Paul & Whitehead,* for respondent.

GREEN, J.* — Karen E. Weir was employed by Nestle Foods Corporation as a sales representative. On August 15, 1987, Ms. Weir was a passenger in a vehicle driven by Robert G. Collins, an underinsured motorist. Both she and Mr. Collins were killed when he apparently fell asleep, crossed over the center line and collided head on with a semi-truck.[1] Ms. Weir's estate settled its claim against Mr. Collins' liability insurer. Thereafter, Larry Weir, Ms. Weir's father and personal representative of her estate, brought this action for underinsured motorist (UIM) benefits against her employer's insurer, American Motorists Insurance Company. American Motorists moved for summary judgment on the basis there was no coverage. The court granted the motion and the action was dismissed. The Weir estate appeals.

The sole question presented is whether there was underinsured motorist coverage under the American Motorists policy. We find none and affirm.

The undisputed facts disclose in the fall of 1986, Nestle Foods directed its insurance broker, Marsh and McLennan, to solicit automobile insurance bid proposals covering the company's owned and leased cars. Pursuant to Nestle Foods' request, Marsh and McLennan in its bid proposal

---

*Judge Dale M. Green was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

[1]No question is raised as to whether she was on company business.

listed coverage for "Minimum Statutory Uninsured Motorists (where Mandatory)". The Kemper Group was selected to provide the insurance coverage and American Motorists issued a policy to Nestle Foods containing this endorsement:

### UNINSURED AND UNDERINSURED MOTORIST COVERAGE

IT IS AGREED THAT FOR ALL STATES, WHERE PERMITTED TO DO SO, THE INSURED HAS ELECTED TO REJECT ALL UNINSURED AND UNDERINSURED MOTORISTS COVERAGE. IN THOSE STATES WHERE THE REJECTION OF COVERAGE IS NOT PERMITTED, THE REQUIRED MINIMUM STATUTORY COVERAGE LIMITS ARE TO APPLY.

Based on this endorsement, American Motorists denied the estate's UIM claim.

The estate then filed this declaratory judgment action to determine the question of coverage. In support of its motion for summary judgment, American Motorists submitted affidavits which reflected that Nestle Foods intended to reject UIM coverage and never paid a premium for it. It was the estate's position, however, that RCW 48.22.030(4), which allows written rejection of UIM coverage, was not satisfied because (1) the rejection was not by the "named insured", Nestle Foods, but by its broker; and (2) the proposal specifications for insurance were not legally sufficient to constitute a "writing". American Motorists argued Marsh and McLennan's bid proposal for minimum protection coupled with the policy's endorsement met the statute's requirement of a written rejection. Summary judgment was granted to American Motorists and this appeal followed.

First, the estate contends only the "named insured", Nestle Foods, could reject coverage. We disagree.

■ Since there are no genuine issues as to any material fact, the only question is whether American Motorists is entitled to summary judgment as a matter of law. *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985); CR 56(c).

The purpose of RCW 48.22.030, the UIM statute, is to allow the injured party to recover those damages which

would have been recovered had the responsible party been insured with liability limits as broad as the injured party's damages. *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 522, 707 P.2d 125 (1985); *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 207-08, 643 P.2d 441 (1982). However, RCW 48.22.030(4) allows a "named insured or spouse" to reject, in writing, underinsured coverage for bodily injury or death, or property damage. The rejection must be specific and unequivocal. *Dairyland Ins. Co. v. Uhls*, 41 Wn. App. 49, 53, 702 P.2d 1214 (1985).

▮ Washington courts have long recognized an agent's authority to act on behalf of its insured in procuring insurance. *Orsi v. Aetna Ins. Co.*, 41 Wn. App. 233, 239, 703 P.2d 1053 (1985); *Hardcastle v. Greenwood Sav. & Loan Ass'n*, 9 Wn. App. 884, 887, 516 P.2d 228 (1973). *See also* 16 J. Appleman, *Insurance* § 8728, at 348 (1981). A court will not presume to change the common law without a clear manifestation of that intent. *Glass v. Stahl Specialty Co.*, 97 Wn.2d 880, 887-88, 652 P.2d 948 (1982).

In *Hall v. Allstate Ins. Co.*, 53 Wn. App. 865, 770 P.2d 1082, *review denied*, 113 Wn.2d 1002 (1989), Mr. Hall procured automobile insurance on behalf of his wife and himself and he alone signed a waiver of UIM coverage. His wife was injured in an accident and asserted a UIM claim. The trial court rejected her argument that only she could waive UIM coverage. On appeal, the court affirmed, stating at pages 867-68:

> Why should the rejection of UIM coverage be treated any differently than any other provision of the insurance contract? . . . Nothing in the statutory language suggests any change in or restriction on the normal principles of agency and community property management when dealing with waivers of UIM coverage. Indeed, when the possibility of ambiguity was suggested, the Legislature promptly made explicit the right of a spouse to act in regard to UIM coverage in the same manner as to the other terms of the contract.

Elsewhere, *Empire Fire & Marine Ins. Co. v. Koven*, 402 So. 2d 1352 (Fla. Dist. Ct. App. 1981) held an insured was bound by the broker's rejection of UIM coverage, notwith-

standing the insured's contention the broker did not have authority to do so. *See also* Annot., *Construction of Statutory Provision Governing Rejection or Waiver of Uninsured Motorist Coverage*, 55 A.L.R.3d 216, 253 (1974).

■ Since there is nothing in Washington's UIM statute or our case law precluding an agent from acting on behalf of an insured in rejecting UIM coverage, we conclude Nestle Foods' broker could act on its behalf to reject coverage.[2]

Nor do we find the estate's argument that Washington's public policy of protecting innocent victims is violated by permitting a broker to act as the insured's agent. As noted in *Progressive Cas. Ins. Co. v. Jester*, 102 Wn.2d 78, 81, 683 P.2d 180 (1984), in the context of motorcycle passenger coverage, "[s]o long as an insured has the opportunity to purchase passenger coverage from an insurer, the public policy in favor of compensating the victims of negligent driving is not violated." That is the situation here. We find no error.[3]

The estate further contends the court erred in considering Nestle Foods' intentions in rejecting UIM coverage. The estate bases this assertion on former RCW 48.22.030(4) which did not require a "written" rejection; in determining whether the insured had rejected UIM coverage, the court considered, among other things, the insured's intentions. *Grange Ins. Ass'n v. Great Am. Ins. Co.*, 89 Wn.2d 710, 715-16, 575 P.2d 235 (1978). The estate reasons that when

---

[2]The estate's reliance on *Kowal v. Grange Ins. Ass'n*, 110 Wn.2d 239, 751 P.2d 306 (1988) and *Thompson v. Grange Ins. Ass'n*, 34 Wn. App. 151, 660 P.2d 307, *review denied*, 99 Wn.2d 1011 (1983) is misplaced. The issue of agency was not present in *Kowal*, and in *Thompson* the court did not base its decision on the fact the broker could not act as the County's agent, but on evidence that the County was unaware of its right to accept or reject UIM coverage.

[3]In fact, some courts do not permit a permissive user of an insured's vehicle to complain of the absence of a written rejection when the insured and insurer agree the insured had waived UIM coverage. *Del Prado v. Liberty Mut. Ins. Co.*, 400 So. 2d 115 (Fla. Dist. Ct. App. 1981); *Liberty Mut. Ins. Co. v. Wright*, 406 So. 2d 1261 (Fla. Dist. Ct. App. 1981), *review denied*, 413 So. 2d 877 (Fla. 1982). Here, the parties have not raised this issue.

the statute was amended to require a written rejection, the insured's intentions became irrelevant. We disagree.

■ Our courts have long adhered to the rule the court's duty in construing an insurance contract is to determine the intent of the parties at the time of contracting. *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 340, 738 P.2d 251 (1987). There is no logical reason to apply this rule to other insurance provisions and exclude its application here. Nestle Foods' intent is relevant in construing the bid proposal and policy endorsement. It is clear from the record Nestle Foods did not want UIM coverage and never paid a premium for it. That intent is manifest in its proposal and the policy endorsement. To find coverage under these circumstances would not further any public policy and would be contrary to the insurance contract bargained for between the parties.

Finally, the estate asserts the bid proposal requesting "Minimum Statutory Uninsured Motorists (where Mandatory)" coverage was not specific enough to meet the statute's requirement of a "writing", relying on *Roger v. Estate of Moulton*, 513 So. 2d 1126, 1132 (La. 1987). In *Roger*, the court held a valid rejection must be set forth in a single document signed by the named insured or authorized representative rejecting coverage as of a specific date and refer to a specific policy; a writing of a less precise nature, regardless of the insured's intent, was held to be insufficient.

■ We do not find this Louisiana decision persuasive in light of this State's objective to give effect to the insured's intent. A writing which, as here, reflects the insured's intent to reject UIM coverage satisfies the purpose of the statute and preserves the expectations of the parties without the additional formalities required in Louisiana. Nor does the fact the letter did not state *under*insured as well as *unin*sured coverage render the bid ambiguous, as argued by the estate, since the endorsement reviewed and accepted by Nestle Foods clearly includes a rejection of both uninsured and underinsured coverage. *See Britton v. Safeco Ins. Co. of Am., supra* at 524. In the circumstances presented here, we

193

find the statutory requirement of rejection in writing was satisfied.

Affirmed.

SHIELDS, C.J., and MUNSON, J., concur.